KOH

EBP/RRR:  USAO 2021R00509

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

Aug 24, 2021

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ____MD____ Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CASE NO. GLS-21-2249** |
| | * | |
| **SHERRIE LYNNE BRYANT,** | * | **FILED UNDER SEAL** |
| | * | |
| Defendant | * | |
| | * | |
| | ******* | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

Your Affiant, Joshua C. Barnhart being first duly sworn, deposes and states as follows:

### INTRODUCTION

1. I am a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS-CI"), United States Department of Treasury. I have been employed by IRS-CI for approximately three years, during which time I have been assigned to the Washington, D.C Field Office. Prior to working at IRS-CI, I was a Special Agent with the Treasury Inspector General for Tax Administration ("TIGTA") for three years, where I was assigned to the Procurement Fraud Division. I have received instruction and training, along with investigative experience, in investigation of criminal violations of Titles 26, 18 and 31 of the United States Code ("USC"), to include fraud-related offenses, tax fraud, money laundering, contract fraud, and Bank Secrecy Act violations.

2. I have personally participated in this investigation and have witnessed many of the facts and circumstances described herein. I have also received information from other law enforcement officers relating to this investigation. The information set forth in this affidavit is based on my own observations and review of documents or reliable information provided to me

by other law enforcement personnel. Unless otherwise indicated, all written and oral statements referred to herein are set forth in substance and in part, rather than verbatim. I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known that would defeat a determination of probable cause.

3. This affidavit is being submitted in support of a criminal complaint and arrest warrant for **SHERRIE LYNNE BRYANT ("BRYANT")**. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe that, on or about March 30, 2020 and on or about April 25, 2020, **BRYANT** committed violations of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1001 (false statements).

## BACKGROUND

### I. The Economic Injury Disaster Loan Program

4. The Economic Injury Disaster Loan ("EIDL") program is a disaster relief program administered by the Small Business Administration ("SBA") that predates the COVID-19 pandemic. Small business owners and non-profit organizations in all U.S. states, the District of Columbia, and U.S. territories can apply for an EIDL. EIDLs are designed to provide economic relief to businesses that are currently experiencing a temporary loss of revenue due to a disaster. EIDL provides loan assistance, including up to $10,000 advances, for eligible entities. The EIDL proceeds can be used to pay fixed debts, payroll, accounts payable and other bills that could have been paid had the disaster not occurred; however, such loan proceeds are not intended to replace lost sales or profits or for expansion of a business. Unlike certain other types of SBA-guaranteed loans, EIDL funds are issued directly from the United States Treasury and applicants apply through the SBA via an online portal and application.

5. The EIDL application process, which also uses certain outside contractors for system support, collects information concerning the business and the business owner, including information as to the gross revenues for the business prior to January 31, 2020; the cost of goods sold; and information as to any criminal history of the business owner. Applicants electronically certify that the information provided is accurate and are warned that any false statement or misrepresentation to SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

**II.     Paycheck Protection Program**

6. In March of 2020, Congress passed the Coronavirus Aid, Relief and Economic Security ("CARES") Act, of which the Paycheck Protection Program ("PPP") was one component. Through the PPP, Congress authorized the SBA to award forgivable loans to small businesses so they could continue to pay salary and wages to their employees. In order to obtain PPP funding, business owners must submit an application to a participating financial institution. The financial institution then funds the PPP using their own money, which is guaranteed by the SBA.

7. Similar to the EIDL application process, the applicant seeking a PPP loan is required to disclose to participating lenders, among other things, the applicant's number of employees and average payroll expenses as well as the criminal history of the owners of the entity. Further, the applicant must certify that the information is correct subject to criminal and civil penalties and that they will use the proceeds "to retain workers and maintain payroll, make mortgage interest payments, lease payments, and utility payments."

**PROBABLE CAUSE**

8. **BRYANT** is a managing member of **NOW LLC**, which was organized in the State of Maryland on September 5, 2013, with **BRYANT** as the sole managing member. On October

16, 2014, Individual 1 was added as a second managing member. **NOW LLC** stated their business purpose was to "provide mentoring, education and training to underserved populations. Also, to provide vocational rehabilitation and mental health support services to: children, youth and adults."

9. Contrary to their stated business purpose, **NOW LLC** has been awarded contracts for "janitorial services" for Amtrak at New Carrollton, Maryland and Baltimore Washington International Airport (BWI) Amtrak station. They have applied for multiple SBA loans through various programs and cited their line of business as "construction contractors." Numerous checks from **NOW LLC's** operating account indicate they may be outsourcing janitorial work to sub-contractors.

10. **BRYANT**, as owner of **NOW LLC**, submitted at least four applications to the SBA for disaster-related loans. On March 30, 2020, **BRYANT** submitted an EIDL loan application for $89,500 using the SBA web portal. In the EIDL loan application, **BRYANT** stated that **NOW LLC** earned approximately $475,610 in gross revenues during the twelve months prior to January 31, 2020. **BRYANT** further stated that **NOW LLC** incurred cost of goods sold of $276,614 during the same period. **BRYANT** listed **NOW LLC**'s business address as an address in Lanham, Maryland. **BRYANT** listed herself as the sole owner of **NOW LLC**. The loan was authorized on May 9, 2020, and deposited on May 12, 2020 into the Capital One bank account owned by **NOW LLC**.

11. SBA EIDL loan applications are received in a cloud-based platform through a server located in Des Moines, Iowa. Once the application is approved, EIDL disbursement payments are initiated by the SBA Denver Finance Center, in Denver, Colorado, which transmits the payment information through the Financial Management System ("FMS") to the Treasury.

The primary server for FMS is in Sterling, Virginia. On March 30, 2020, **BRYANT** submitted her loan application using an IP address ending in ef23, which was located in Upper Marlboro, Maryland.

12. Law enforcement has reviewed personal income tax returns from the IRS for **BRYANT**, a Form 1065, Return of Partnership Income for **NOW LLC** for the 2018 tax year, and payroll tax returns for January 1, 2018 to present. **NOW LLC** had not filed a partnership tax return for the 2019 tax year. If **NOW LLC** earned the income detailed in **BYRANT**'s EIDL loan application, that would result in a filing requirement for **NOW LLC**. Further, **BRYANT** indicated on her Form 1040 US Individual Income Tax Return ("Form 1040") that she had passive income from **NO OPPORTUNITY WASTED**, using the same EIN listed for **NOW LLC**. The income reported on **BRYANT**'s Form 1040 for 2019 from **NO OPPORTUNITY WASTED** is inconsistent with the amount detailed in her loan application for **NOW LLC**. **BRYANT** reported income of $69,524 from **NO OPPORTUNITY WASTED** during the 2019 tax year, although there is no tax return on file for the partnership. **BRYANT** did not report any additional income related to **NOW LLC**.

13. In the same EIDL application dated March 30, 2020, **BRYANT** made additional misrepresentations to the SBA. On line number 61c, the application asks: "For any criminal offense…have you ever been convicted, plead guilty, plead nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation." **BRYANT** answered "No" to this question. At the time **BRYANT** answered that question, however, she was on federal probation after having plead guilty on May 20, 2019, in the U.S. District Court for the District of Maryland to 18 U.S.C. § 1516 (Obstruction of a Federal Audit), a federal felony. *See United States v. Sherrie Lynn Bryant,* Crim. No. PWG-17-518. On June 4, 2019, **BRYANT** was sentenced to

three years of probation. On November 24, 2020, **BRYANT's** U.S. Probation Officer confirmed that **BRYANT** was on probation when **BRYANT** applied for the EIDL loan on March 30, 2020.

14. Similar to her EIDL application, on April 25, 2020, **BRYANT** submitted an application for PPP loan proceeds totaling $21,200 to Virginia National Bank. At that time, **BRYANT** had been convicted of a federal felony and was on probation; yet, **BRYANT** answered "No" to the question on her application regarding her criminal history. The question stated, "Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?" **BRYANT** responded "No" while she was the sole owner and on probation. The loan proceeds were transferred to **NOW LLC's** business bank account at Capital One on May 6, 2021.

15. In the same application, **BRYANT** was also asked, "within the last 5 years, for any felony, has the Applicant . . . (1) been convicted; (2) pleaded guilty; (3) pleaded nolo contendere; (4) been placed on pretrial diversion; or (5) been placed on any form of parole or probation (including probation before judgment)?" Again, **BRYANT** responded "No."

16. PPP loan applications submitted prior to August 8, 2020, were received through an SBA server located in Sterling, Virginia. This server is also used by the PPP lenders to report disbursements and to transmit the SBA processing fee from the SBA to the PPP lender. On April 28, 2020, **BRYANT** signed the loan application using an IP address ending 167.70, which was located in Baltimore, Maryland.

17. On August 19, 2021, law enforcement conducted a consensual interview of **BRYANT**. **BRYANT** confirmed that she had applied for and was granted several PPP and EIDL loans. **BRYANT** was shown a copy of her PPP loan application that was submitted to Virginia

National Bank. **BRYANT** confirmed that the information contained on the document was hers; however, **BRYANT** provided no explanation as to why she attested that she had not been previously convicted and was not on probation at the time she was awarded the loan. **BRYANT** was also shown a copy of the EIDL loan application submitted to the SBA on March 30, 2020. **BRYANT** again identified her information but did not offer an explanation as to why she attested that she had not previously been convicted and was not on probation. **BRYANT** stated that she qualified for the loan.

18. **BRYANT** stated she applied for and was granted two additional loans. **BRYANT** received a PPP loan in March or April 2021 through First National Bank of Pennsylvania for a total of approximately $100,000. **BRYANT** also stated that she applied for and was granted an EIDL loan totaling approximately $389,000 in July 2021.

## CONCLUSION

19. Based on the facts set forth above, I respectfully submit that there is probable cause to believe that, on or about March 30, 2020 and on or about April 25, 2020, **BRYANT** committed violations of 18 U.S.C. §§ 1343 and 1001.

*Joshua Barnhart*
Joshua C Barnhart, Special Agent
Internal Revenue Service
Criminal Investigation
Department of Treasury

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) this ___24th___ day of August, 2021.

Honorable Gina L. Simms
United States Magistrate Judge