KOH
RRR: USAO 2021R00509

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO.** PWG 22-cr-308 |
| | * | |
| **SHERRIE LYNNE BRYANT,** | * | (Wire Fraud, 18 U.S.C. § 1343; |
| | * | Forfeiture, 18 U.S.C. § 981(a)(1)(C), |
| **Defendant** | * | 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c)) |
| | * | |

*******

## INFORMATION

### COUNT ONE
### (Wire Fraud)

The United States Attorney for the District of Maryland charges that:

At all times relevant to this Information:

### The Defendant

1. Defendant **SHERRIE LYNNE BRYANT** ("**BRYANT**") was a resident of Maryland between at least March 2020 and July 2021.

### Relevant Entities

2. NOW LLC was organized in the State of Maryland on or about September 5, 2013. **BRYANT** was the sole managing member at the time of organization. On or about October 17, 2014, Individual 1 was added as a second managing member. NOW LLC stated their business purpose was to "provide mentoring, education and training to underserved populations. Also, to provide vocational rehabilitation and mental health support services to: children, youth and adults."

## The Economic Injury Disaster Relief Program

3. The Economic Injury Disaster Loan ("EIDL") program was a Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

4. During the COVID-19 pandemic, the SBA was authorized to provide EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic and to issue advances of $10,000. The amount of the advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid.

5. In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant was also required to electronically certify that all the information in the application was true and correct to the best of the applicant's knowledge.

6. EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

**The Paycheck Protection Program**

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

8. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses. The applicant was also required to electronically certify that all the information in the application was true and correct to the best of the applicant's knowledge.

9. A PPP loan application was required to be processed by a participating lender, such as a financial institution. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and

the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

10. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a certain percentage of the PPP loan proceeds on payroll expenses.

### The Scheme to Defraud

11. Between in or around March 2020 and continuing until in or around June 2021, the defendant,

**SHERRIE LYNNE BRYANT,**

did knowingly and willfully devise and intend to devise, and with the intent to defraud, a scheme and artifice to defraud the SBA, to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, pictures, and sounds, as further described below, in violation of 18 U.S.C. § 1343.

### Purpose of the Scheme to Defraud

12. It was the purpose of the scheme to defraud for **BRYANT** to unjustly enrich herself and others by fraudulently obtaining EIDL and PPP loan proceeds.

**Manner and Means of the Scheme to Defraud**

EIDL Loan Application for NOW LLC

13. On or about March 30, 2020, **BRYANT** submitted and caused the submission of an application to the SBA on behalf of NOW LLC for an EIDL loan in the amount of $89,500, as well as an EIDL advance. The loan application listed **BRYANT** as the Owner of NOW LLC.

14. On the EIDL loan application, **BRYANT** falsely stated that NOW LLC had $475,610 of gross revenue and $276,614 of costs of goods for the 12-month period prior to January 31, 2020.

15. Additionally, on the EIDL loan application, **BRYANT** falsely stated that she had not been, for any criminal offense, convicted, pleaded guilty, pleaded nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation. When **BRYANT** made this false statement, **BRYANT** was on federal probation having pleaded guilty on December 3, 2018, in the U.S. District Court for the District of Maryland to Obstruction of a Federal Audit, in violation of 18 U.S.C. § 1516, a federal felony.

16. On or about April 15, 2020, the SBA deposited an advance of $10,000 in EIDL loan proceeds via interstate wire into NOW LLC's bank account at Financial Institution 1.

17. On or about May 9, 2020, NOW LLC's EIDL loan application was approved and **BRYANT** signed the promissory note on May 9, 2020, as the "Owner/Officer" of NOW LLC.

18. On or about May 12, 2020, the SBA deposited the sum of $89,400 in EIDL loan proceeds via interstate wire into NOW LLC's bank account at Financial Institution 1.

19. On or about April 22, 2021, **BRYANT** submitted a request on behalf of NOW LLC for a modification of the EIDL loan, requesting and receiving approval to increase the loan amount from $89,500 to $388,000.

20.     In seeking this loan modification, **BRYANT** relied on her prior false certifications in her original EIDL loan application, including that **BRYANT** had never, for any criminal offense, been convicted, pleaded guilty, pleaded nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation.

21.     On or about June 22, 2021, NOW LLC's request to increase the loan amount was approved and **BRYANT** signed the First Modification of Note on the same day as "Owner/Officer" of NOW LLC.

22.     On or about June 28, 2021, the SBA deposited the sum of $298,500 in EIDL loan proceeds via interstate wire into NOW LLC's bank account at Financial Institution 1.

### PPP Loan Application for NOW LLC

23.     On or about April 28, 2020, **BRYANT** submitted an application to Financial Institution 2 for a PPP loan in the amount of $21,200. The loan application listed **BRYANT** as the CEO of NOW LLC.

24.     On the PPP loan application, **BRYANT** falsely stated that she was not on probation or parole at the time the application was submitted. When **BRYANT** made this false statement, **BRYANT** was on federal probation having plead guilty on December 3, 2018, in the U.S. District Court for the District of Maryland to Obstruction of a Federal Audit, in violation of 18 U.S.C. § 1516, a federal felony. **BRYANT** also falsely stated that within the last five years she had not, for any criminal offense, been convicted, pleaded guilty, or been placed on any form of parole or probation.

25.     On or about May 6, 2020, Financial Institution 2 deposited the sum of $21,200 in PPP loan proceeds via interstate wire into NOW LLC's bank account at Financial Institution 1.

## The Charge

26.     On or about March 30, 2020, in the District of Maryland, the defendant,

**SHERRIE LYNNE BRYANT,**

did knowingly and willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and omissions, transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, pictures, and sounds for the purpose of executing the scheme and artifice to defraud, an interstate wire transmission caused by **BRYANT**, in Maryland, submitting the EIDL loan application to the SBA, outside of Maryland.

18 U.S.C. § 1343

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction of the offense charged in Count One of this Information.

### Wire Fraud Forfeiture

2. Upon conviction of the offense charged in Count One of this Information, the defendant,

**SHERRIE LYNNE BRYANT,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, including, but not limited to: a forfeiture money judgment in the amount of $419,100 in U.S. Currency equal to the proceeds the defendant obtained as a result of the scheme to defraud.

### Substitute Assets

3. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Date:  August 30, 2022

                                          Erek L. Barron
                                          United States Attorney