## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Between at least March 2020 and July 2021, and at all times relevant to the conduct described below, the defendant **SHERRIE LYNNE BRYANT** ("**BRYANT**") was a resident of Maryland.

The Economic Injury Disaster Loan ("EIDL") program was a Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters. During the COVID-19 pandemic, the SBA was authorized to provide EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic and to issue advances of $10,000. The amount of the advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid. In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant was also required to electronically certify that all the information in the application was true and correct to the best of the applicant's knowledge.

In March of 2020, Congress passed the Coronavirus Aid, Relief and Economic Security ("CARES") Act, of which the Paycheck Protection Program ("PPP") was one component. Through the PPP, Congress authorized the SBA to award forgivable loans to small businesses so they could continue to pay salary and wages to their employees. In order to obtain PPP funding, business owners must submit an application to a participating financial institution. The financial institution then funds the PPP using their own money, which is guaranteed by the SBA. Similar to the EIDL application process, the applicant seeking a PPP loan is required to disclose to participating lenders, among other things, the applicant's number of employees and average payroll expenses as well as the criminal history of the owners of the entity. Further, the applicant must certify that the information is correct subject to criminal and civil penalties and that they will use the proceeds "to retain workers and maintain payroll, make mortgage interest payments, lease payments, and utility payments."

**BRYANT** was a managing member of NOW LLC, which was organized in the State of Maryland on September 5, 2013, with **BRYANT** as the sole managing member. On October 17, 2014, Individual 1 was added as a second managing member. NOW LLC stated their business purpose was to "provide mentoring, education and training to underserved populations. Also, to provide vocational rehabilitation and mental health support services to: children, youth and adults."

Contrary to their stated business purpose, NOW LLC has been awarded contracts for "janitorial services" for Amtrak at New Carrollton, Maryland and Baltimore Washington International Airport (BWI) Amtrak station. They have applied for multiple SBA loans through various programs and cited their line of business as "construction and contractors." Numerous checks from NOW LLC's operating account indicate they may be outsourcing janitorial work to subcontractors.

On March 30, 2020, **BRYANT** submitted an EIDL loan application for $89,500 using the SBA web portal. In the EIDL loan application, **BRYANT** stated that NOW LLC earned approximately $475,610 in gross revenues during the twelve months prior to January 31, 2020. **BRYANT** further stated that NOW LLC incurred cost of goods sold of $276,614 during the same period. This information was false. For example, the income reported on **BRYANT**'s Form 1040 for 2019 from "No Opportunity Wasted"—using the same EIN listed for NOW LLC—was $69,524.00. NOW LLC did not file a partnership tax return for the 2019 tax year. If NOW LLC earned the income detailed in **BRYANT**'s EIDL loan application, that would have resulted in a filing requirement for NOW LLC. Additionally, on line number 61c, where the application asks "For any criminal offense…have you ever been convicted, plead guilty, plead nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation," **BRYANT** falsely answered "No."

At the time **BRYANT** answered that question, however, **BRYANT** was on federal probation after having plead guilty on December 3, 2018, in the U.S. District Court for the District of Maryland to 18 U.S.C. § 1516 (Obstruction of a Federal Audit), a federal felony. *See United States v. Sherrie Lynne Bryant*, Crim. No. PWG-17-518. **BRYANT** submitted the loan application while she was located in Upper Marlboro, Maryland. SBA EIDL loan applications are received in a cloud-based platform through a server located in Des Moines, Iowa.

On the loan application, **BRYANT** selected a checkbox requesting "to be considered for an advance of up to $10,000." **BRYANT** received the $10,000 advance, which was deposited on April 15, 2020, into the Capital One bank account ending in 8072 owned by NOW LLC. Subsequently, the loan was approved on or about May 9, 2020, and **BRYANT** signed the promissory note on the same day as "Owner/Officer" of NOW LLC. The sum of $89,400 was deposited on or about May 12, 2020, into the same Capital One bank account.

On April 28, 2020, **BRYANT** submitted an application for PPP loan proceeds totaling $21,200 to Virginia National Bank. At that time, **BRYANT** had been convicted of the previously discussed federal felony and was on probation. Notwithstanding this, **BRYANT** answered "No" to the question on her application regarding her criminal history. Specifically, the question stated, "Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?" and to which **BRYANT** falsely responded "No." **BRYANT** was also asked, "within the last 5 years, for any felony, has the Applicant . . . (1) been convicted; (2) pleaded guilty; (3) pleaded nolo contendere; (4) been placed on pretrial diversion; or (5) been placed on any form of parole or probation (including probation before judgment)?" and **BRYANT** again falsely

Rev. August 2018

responded "No." **BRYANT** submitted the application as "CEO" of NOW LLC. **BRYANT** submitted the application while she was located in Baltimore, Maryland. The loan proceeds of $21,200 were transferred to NOW LLC's bank account ending in 2613 at Capital One on May 6, 2020.

On April 22, 2021, **BRYANT** submitted a request for a modification of the EIDL loan. Specifically, **BRYANT** requested and received approval to increase the loan amount from $89,500 to $388,000. In seeking this loan modification, **BRYANT** relied on her prior certifications from March 30, 2020, in her EIDL loan application, including **BRYANT**'s false assertions that she had never been convicted, plead guilty, plead nolo contendere, been placed on pretrial diversion, or been placed on any form of parole or probation. The loan was approved on or about June 22, 2021, and **BRYANT** signed the First Modification of Note on the same day as "Owner/Officer" of NOW LLC. The sum of $298,500 was deposited on or about June 28, 2021, into the Capital One bank account ending in 8072 owned by NOW LLC.

In total, **BRYANT** obtained at least $419,100.00 in fraudulent loan proceeds as a result of the scheme to defraud. Upon receiving the fraudulently obtained EIDL and PPP proceeds, **BRYANT** misappropriated a portion of the proceeds for personal use, including paying for her car and a boat, using the funds to pay for a vacation, and tickets to sporting events. The actual loss caused by **BRYANT**'s scheme was at least $419,100.00.

**BRYANT** was on supervised release from her May 20, 2019, conviction in the U.S. District Court for the District of Maryland when she committed the instant offense. Accordingly, **BRYANT** is guilty of Violation Number 1 alleged in the Petition on Probation dated September 7, 2021.

SO STIPULATED:

_____
Rajeev R. Raghavan
Assistant United States Attorney

_____
Sherrie Lynne Bryant
Defendant

_____
Charles Burnham, Esq.
Counsel for Defendant