IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. DJB-22-308 |
| | * | CRIMINAL NO. DJB-17-518 |
| SHERRIE LYNNE BRYANT, | * | |
| | * | |
| Defendant | * | |
| | * | |
| | ******* | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, hereby submits the Government's Memorandum in Aid of Sentencing. Defendant Sherrie Lynn Bryant ("Bryant" or "the defendant") is scheduled to be sentenced on January 26, 2023, at 2:00 p.m. As a result of fraudulent loan applications related to the COVID-19 pandemic, Bryant obtained at least $419,100 in fraudulent loan proceeds from March 2020 through April 2021. Bryant has two prior federal convictions—one for wire fraud and one for obstruction of an audit—and was on (and remains on) probation for the latter when she submitted these fraudulent applications. Bryant now stands convicted of three federal crimes over the last 17 years, with no signs that any prior conviction has deterred the defendant from continuing to commit fraud. For the reasons set forth below, the Government submits that a term of imprisonment of **27 months as to the current offense ("Count One"), followed by a term of imprisonment of 12 months for Bryant's violation of supervised release, for a total term of imprisonment of 39 months**, is a sentence sufficient but not greater than necessary to satisfy the goals of sentencing. The Government further requests that the Court impose an additional term of supervised release of 3 years and enter a forfeiture order and a restitution order, both in the amount of $419,100.

I.      **Background**

On August 24, 2021, the defendant was charged by criminal complaint with one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of false statements, in violation of 18 U.S.C. § 1001.

On August 30, 2022, the defendant pled guilty to an Information charging her with wire fraud, in violation of 18 U.S.C. § 1343 ("Count One").  The defendant also admitted to violating the terms of her federal probation by committing another federal, state, or local crime.  ECF 34, ¶ 1 (Plea Agreement).

Pursuant to a written plea agreement, the parties agreed that the base offense level for Count One is **7** and that there is a **12**-level increase because the amount of actual or intended loss involved in the offense was more than $250,000 but less than $550,000.  The Government did not oppose a **2**-level reduction for acceptance of responsibility, and the Government agreed to move for an additional **1**-level reduction in recognition of the defendant's timely notification of her intention to enter a plea of guilty.  The final offense level is therefore **16**.  The United States Probation Office ("Probation") agrees with this calculated offense level.  (PSR ¶¶ 22-31.)

The Government agrees with Probation's calculation that the defendant's criminal history score is **6** and her criminal history category is therefore **III**.  (PSR ¶ 38.)  For a final offense level of **16** and criminal history category **III**, the Guidelines prescribe a sentence of **27 months to 33 months imprisonment** as to Count One**.**

The parties further agreed that the guidelines range for Bryant's violation of probation is **6 months to 12 months** imprisonment because Count One is a Grade B violation and at the time of the defendant's original conviction, she was a criminal history category II.  The parties further agreed that, pursuant to U.S.S.G. § 7B1.3(f), any term of imprisonment upon the revocation of

2

supervised release shall be ordered to be served <u>consecutively</u> to any sentence of imprisonment imposed as to Count One.

Further, pursuant to the parties' plea agreement, the Government has agreed to recommend a sentence at the low end of the advisory guidelines range as to Count One, and a reasonable sentence as to the violation of probation.  The Court is <u>not</u> bound by this recommendation.

## II.    <u>Legal Standard</u>

In *United States v. Green,* 436 F.3d 449 (4th Cir. 2006), the Fourth Circuit held that after *United States v. Booker,* 543 U.S. 220 (2005), which made the Sentencing Guidelines effectively advisory, the district court is commanded to fulfill congressionally established objectives for sentencing set out in 18 U.S.C. § 3553(a): promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; and providing restitution to victims.  *See Green,* 436 F.3d at 455; *see also United States v. Moreland,* 437 F.3d 424, 432 (4th Cir. 2006).

Thus, in conducting a sentencing, district courts must (1) calculate the sentence range recommended by the Sentencing Guidelines; (2) determine whether a sentence within that range and within statutory limits serves the statutory sentencing factors set out in 18 U.S.C. § 3553(a) and, if not, select a sentence that does serve those factors; (3) implement mandatory statutory limitations; and (4) articulate the reasons for selecting the particular sentence, especially explaining why a sentence outside of the Sentencing Guidelines range better serves the relevant statutory sentencing purposes.  *See Green,* 436 F.3d at 455-56; *Moreland,* 437 F.3d at 432.  The explanation of a variant sentence must be tied to the factors set forth in § 3553(a) and must be accompanied by findings of fact as necessary.  *See Green,* 436 F.3d at 455-56; *United States v.*

*Perez-Pena,* 453 F.3d 236, 241 (4th Cir. 2006).  The district court is given "some latitude," and "a degree of deference," to tailor a particular sentence to the circumstances.  *Green,* 436 F.3d at 456-57; *Moreland,* 437 F.3d 433.

## III.    Relevant Sentencing Considerations Under 18 U.S.C. § 3553(a)

The statement of facts attached to the defendant's plea agreement demonstrates the serious nature of the offense.  The defendant fraudulently took advantage of the Economic Injury Disaster Loan ("EIDL") program and Paycheck Protection Program ("PPP")—both programs that offered emergency financial assistance to eligible small businesses experiencing substantial disruptions due to the COVID-19 pandemic—to steal money from the federal government to which she was not entitled.  In total, between March 2020 and April 2021, as a result of three separate fraudulent applications, Bryant stole at least $419,100 in loan proceeds—money that should have been reserved for those actually in need during the height of the pandemic.  Not only did Bryant falsely inflate profits for her company NOW LLC, in each of the fraudulent loan applications, Bryant also falsely claimed that she had not been previously convicted of any crimes.

Specifically, in March 2020, Bryant submitted an EIDL application that claimed NOW LLC had earned approximately $475,610 in gross revenues during the twelve months prior to January 31, 2022 and had incurred a cost of goods sold of $276,614 during the same period.  In reality, Bryant's business earned less than $70,000 of income that year.    Moreover, in the application, Bryant denied having previously been convicted of a criminal offense when, in fact, Bryant has two prior federal convictions (and was on probation for one such conviction while she was submitting such application).  Pursuant to the false application, Bryant received an EIDL loan of $89,500, plus a $10,000 advance.

Then, in April 2020, Bryant submitted a fraudulent application for PPP loan proceeds, again claiming that she had never been convicted of a crime.   As a result, Bryant obtained another $21,200 from the U.S. Government.

In April 2021, Bryant submitted a request for a modification to her May 2020 EIDL Loan. Specifically, she requested that the loan be increased from $89,500 to $388,000 and, based on the fraudulent application and request for modification, the increased loan was approved.

Adding insult to injury, not only did Bryant fraudulently obtain these funds to which she was not entitled, Bryant also did not use the funds for their intended purpose:  to assist her business and its employees.   Instead, Bryant used a portion of the proceeds for personal use, including paying for her car and a boat, to pay for a vacation, and to pay for tickets to sporting events.   A significant sentence must be imposed to reflect the seriousness of the offense, the need for just punishment, and to promote respect for the law.

A sentence of 27 months as to Count One, followed by 12 months for the defendant's violation of probation, is also warranted to deter the defendant and to protect the public from the defendant's continued criminal conduct.   The current offense—which the defendant committed while on probation—is the defendant's *third* federal fraud conviction.   The defendant represents that she is a businesswoman, yet each of her businesses and places of employment have been rife with fraudulent conduct.   Bryant has shown that she cannot—or will not—work and earn legitimate money, despite having the necessary skills and education to do so.   She must be deterred from continuing to commit fraud.

The details of Bryant's past infractions make this clear. In 2005, the defendant pled guilty to two counts of wire fraud and was sentenced to 27 months' imprisonment.   From January 2003 through September 2004, the defendant worked in the accounting department of a company in

5

Clinton, Maryland. While employed at the company, the defendant requested wire transfers purportedly to the company when, in fact, many of the requested transfer were to her personal account. Through this scheme, the defendant obtained approximately $537,500 in victim funds.

But that was not it. The defendant conducted this same scheme at the next company with which she was employed, from November 2004 through January 2005. During this time, while employed at the second company, the defendant caused wire transfers to her personal account and to her personal vendors (such as her personal gas and cable companies) and charged personal expenditures to the company's corporate credit cards. From this second company, Bryant stole approximately $47,200. Bryant was released from the Bureau of Prisons in 2007.

Bryant's next job after being released from BOP was at Creative Options, where she was a contract manager.[1] At Creative Options, Bryant again committed fraud—the subject of her second federal criminal conviction. Specifically, in 2017, the defendant was convicted of obstruction of a federal audit and was sentenced to 3 years' probation.

From 2009 through 2014, the defendant's employer Creative Options—which provided job coaching services to mentally challenged adults in Washington, DC and Maryland—perpetrated a false billing scheme against the District and federal Medicaid programs. A Medicaid provider can bill for "professional" job coaching services only if the job coach graduated from a four-year college and has at least two years of experience in "supported employment." A provider can also bill for "paraprofessional" job coaching services, which requires the job coach to have at least a high school diploma and three years of supported employment. Work experience aside, a provider

---

[1] *See* Bryant has also worked at Tate's Tax Services. According to the PSR, this business is owned by a relative of Bryant's and has employed Bryant from 2007 through the present. *See* https://www.tatestaxservice.com/who-we-are (indicating that the defendant ("Sherrie") is the stepchild of one of the founders of Tate's Tax Services and works at the company alongside her two siblings, Karen and Phil)

cannot bill at a professional rate unless the job coach has a degree from a four-year college, or at a paraprofessional rate unless the job coach has high school diploma. Though Creative Options normally rendered job coaching services to its clients, the company ignored the rules described above and billed DC Medicaid (which the federal government reimburses) at an artificially inflated rate.

Specifically, from 2010 until early 2013, Creative Options billed job coaches who did not graduate from high school (and were therefore entirely unqualified to perform any type of job coaching service) at the paraprofessional rate, and billed job coaches who did not graduate from college (and therefore could only provide paraprofessional services) at the professional rate. When Medicaid reviewers audited Creative Options in October 2012, Bryant personally forged the job coaches' credentials and convinced the job coaches to lie to the reviewers about their education and work experience.  As such, once again, Bryant used her position of employment to commit crimes to benefit herself.

NOW LLC is Bryant's only other business venture, and it too involved fraud—the current offense.  As set forth in the statement of facts, Bryant was a managing member of NOW LLC, which was organized in Maryland in September 2013, with Bryant as the sole managing member. NOW LLC stated that its business purpose was to "provide mentoring, education and training to underserved populations."  Contrary to its stated purpose, however, NOW LLC has been awarded contracts for "janitorial services" for Amtrak and has applied for multiple SBA loans through various programs and cited its line of business as "construction and contractors."  Most relevant to this sentencing, Bryant used NOW LLC to perpetrate her current scheme to obtain COVID-19 related loans designed to help businesses and their employees which, as explained above, Bryant obtained using grossly inflated profits and denials of her prior criminal convictions.

In sum, the defendant has used nearly every business and place of employment to engage in criminal conduct to her personal benefit.  The defendant must be incarcerated for a significant period of time to ensure that the public is protected from the defendant and to attempt to deter the defendant from continuing to live a life of crime.

## IV.    **Conclusion**

For the foregoing reasons, and additional information that may be presented at the sentencing hearing, the Government respectfully submits that a sentence of 27-month sentence as to Count One, followed by a 12-month sentence for the violation of probation, for a total sentence of 39 months, is sufficient but not greater than necessary to meet the purposes of sentencing as enumerated in the § 3553(a) factors.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:    ___/s/_____
       Kelly O. Hayes
       Assistant United States Attorney